# Exhibit 1

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re<br><br>CUSTOMS AND TAX ADMINISTRATION OF THE KINGDOM OF DENMARK (SKATTEFORVALTNINGEN) TAX REFUND SCHEME LITIGATION<br><br>This document relates to: 1:19-cv-01867-LAK, 1:19-cv-01868-LAK, 1:19-cv-01869-LAK, 1:19-cv-01895-LAK, 1:19-cv-01896-LAK, 1:19-cv-01898-LAK, 1:19-cv-01904-LAK, 1:19-cv-01906-LAK, 1:19-cv-01911-LAK, 1:19-cv-01924-LAK | Master Docket 18-md-02865 (LAK)<br>ECF Case |

# DEFENDANTS' REPLY MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION TO DISMISS THE COMPLAINTS PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(b)(1)

**WILMER CUTLER PICKERING HALE AND DORR LLP**

MICHAEL G. BONGIORNO
ALAN E. SCHOENFELD
ALLISON STODDART
WILMER CUTLER PICKERING
HALE AND DORR LLP
7 World Trade Center
250 Greenwich Street
New York, NY 10007
(212) 230-8800

MICHAEL POSADA
WILMER CUTLER PICKERING
HALE AND DORR LLP
1875 Pennsylvania Avenue NW
Washington, DC 20006
(202) 663-6000

August 19, 2019

# TABLE OF CONTENTS

Page

ARGUMENT ..... 1

I. SKAT Has No Standing to Sue "As the Kingdom of Denmark" ..... 1

A. SKAT Is an Agency or Function of the Kingdom, Not the Kingdom Itself ..... 2

B. SKAT's Unitary Government Theory Is Contrary to Article III ..... 5

II. SKAT Has No Particular, Individual Injury and No Standing to Sue ..... 7

CONCLUSION ..... 10

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Alaska Legislative Council v. Babbitt*,
181 F.3d 1333 (D.C. Cir. 1999) ....................6

*Carter v. HealthPort Technologies, Inc.*,
822 F.3d 47 (2d Cir. 2016)....................8, 10

*Gill v. Whitford*,
138 S. Ct. 1916 (2018) ....................2

*Jackson National Life Insurance Co. v. Ligator*,
949 F. Supp. 200 (S.D.N.Y. 1996)....................7

*Kerr v. Hickenlooper*,
824 F.3d 1207 (10th Cir. 2016) ....................6

*L.A.M. Recovery, Inc. v. Department of Consumer Affairs*,
377 F. Supp. 2d 429 (S.D.N.Y. 2005), *aff'd*, 184 F. App'x 85 (2d Cir. 2006)....................7

*Makarova v. United States*,
201 F.3d 110 (2d Cir. 2000)....................8

*N.Y. State Citizens' Coalition for Children v. Poole*,
922 F.3d 69 (2d Cir. 2019)....................2

*Pfizer, Inc. v. Government of India*,
434 U.S. 308, 98 S. Ct. 584 (1978)....................5

*Republic of Honduras v. Philip Morris Cos.*,
341 F.3d 1253 (11th Cir. 2003) ....................5

*Ross v. AXA Equitable Life Insurance Co.*,
115 F. Supp. 3d 424 (S.D.N.Y. 2015), *aff'd*, 680 F. App'x 41 (2d Cir. 2017)....................5

*Spokeo, Inc. v. Robins*,
136 S. Ct. 1540 (2016)....................5

*Sprint Communications Co. v. APCC Services, Inc*,
554 U.S. 269, 128 S. Ct. 2531 (2008)....................9

*State by & through Tennessee General Assembly v. United States Department of State*,
2019 WL 3310332 (6th Cir. July 24, 2019)....................6

*Uniband, Inc. v. Commissioner*,
140 T.C. 230 (2013)....................................................................................................4

*United States v. Cambio Exacto, S.A.*,
166 F.3d 522 (2d Cir. 1999).................................................................................7, 8

*United States v. Federative Republic of Brazil*,
748 F.3d 86 (2d Cir. 2014)......................................................................................5

*Virginia House of Delegates v. Bethune-Hill*,
139 S. Ct. 1945 (2019)..............................................................................................6

*W.R. Huff Asset Management Co., LLC v. Deloitte & Touche LLP*,
549 F.3d 100 (2d Cir. 2008).................................................................................7, 8

**Docketed Cases**

*Skatteforvaltingen v. RJM Capital Pension Plan*, No. 19-cv-01898 (S.D.N.Y.)...........................2

**Statutes & Regulations**

26 C.F.R. § 1.892-2T ..................................................................................................4

28 U.S.C. § 1603(a) ....................................................................................................4

**Other Authorities**

Convention for the Avoidance of Double Taxation and the Prevention of Fiscal Evasion
with Respect to Taxes on Income, U.S.-Den. Aug. 19, 1999, T.I.A.S. No. 13056 ...............3, 4

*Skatteforvaltningen (the Danish Customs and Tax Administration) v. Solo Capital Partners LLP et al.*, No. CL-2018-000297 (High Ct. of Justice, Bus. & Prop. Cts. of England & Wales) ..........................................................................................................2, 3

Defendants argued in their motion to dismiss that SKAT failed to allege that it suffered a direct, individualized harm. SKAT has little to say on that argument in its opposition. And its declarants fundamentally agree with Defendants' own submission that SKAT simply collects money on behalf of the Kingdom of Denmark. So SKAT takes a different tack in its opposition, arguing that the Kingdom of Denmark suffered an injury, and that SKAT is the Kingdom itself.

SKAT cannot satisfy Article III by pointing to an injury to the Kingdom and asserting that it has standing to vindicate that injury because SKAT is, for purposes of this litigation, the Kingdom. As a factual matter, that position contradicts SKAT's own statements and positions taken in this case and others, where SKAT has stated explicitly that SKAT has "separate legal personality" and that it sues as an "agency" or "function" of the Kingdom—not as the Kingdom itself. And as a legal matter, Article III standing is a question of U.S. law, not Danish law, and U.S. law rejects SKAT's simplistic conflation of itself and the Kingdom.

As to its own standing, SKAT's response confirms that it suffered no particular, individualized harm. The best argument SKAT can marshal is that it holds a bank account in its own name, and so any payment from this account constitutes an injury to SKAT. But the Second Circuit rejected that principle in *Huff*, and SKAT makes no effort to square its submission with this case law. *Carter*, SKAT's principal case in support of its own supposed standing, only confirms the obvious point that a principal has standing to sue for its own injuries, even when an agent has made payments on the principal's behalf. That rule does not help SKAT here.

## ARGUMENT

### I. SKAT Has No Standing to Sue "As the Kingdom of Denmark"

SKAT has essentially abandoned any argument that it has a personal stake in this case. SKAT now seems content to argue that any injury rests with the Kingdom of Denmark, and that—notwithstanding its prior allegations of distinctness and agency—SKAT *is* the Kingdom

for purposes of this litigation. But "standing is not dispensed in gross," *Gill v. Whitford*, 138 S. Ct. 1916, 1934 (2018) (citation omitted), and the Kingdom's interest in this case does not give SKAT the right to sue. SKAT must "prove concrete and particularized injuries." *Id.* It cannot, nor can it "assert[] the rights or legal interests of others simply to obtain relief from injury to [itself]." *N.Y. State Citizens' Coalition for Children v. Poole*, 922 F.3d 69, 75 (2d Cir. 2019) (alterations and citations omitted).

**A. SKAT Is an Agency or Function of the Kingdom, Not the Kingdom Itself**

In its filings in this lawsuit and others arising from the same alleged conduct, SKAT has consistently represented that it is distinct from, and not equivalent to, the Kingdom of Denmark. Rather, it is an inferior entity, seeking redress as an "agency" or "function" of the Kingdom. *See* Compl. ¶ 1, *Skatteforvaltingen v. RJM Capital Pension Plan*, No. 19-cv-01898 (S.D.N.Y. Feb. 28, 2019), ECF 1 ("Plaintiff SKAT is the *agency* of the government of Denmark charged with the assessment and collection of Danish taxes." (emphasis supplied)); SKAT Mot. to Dismiss Am. Countercls., at 2, No. 1:18-md-02865 (S.D.N.Y. May 6, 2019), ECF 114 ("SKAT is the Customs and Tax Administration of the Kingdom of Denmark, the *agency* responsible for assessing and collecting taxes in Denmark and issuing refunds to claimants." (emphasis supplied)); Bongiorno Decl. Ex. A (SKAT Resps. and Objections to Defs.'s First Reqs. for Production of Docs., at 4-5 & 7, No. 1:18-md-02865 (Apr. 8, 2019) ("SKAT has no obligation or duty (and will undertake no such obligation or duty) to search for, collect or produce information or documents that are under the possession, custody or control of any other agency or instrumentality of the government of the Kingdom of Denmark."); Bongiorno Decl. Ex. B (Re-Am. Particulars of Claim ¶ 1, *Skatteforvaltningen (the Danish Customs and Tax Administration) v. Solo Capital Partners LLP et al.*, No. CL-2018-000297 (High Ct. of Justice, Bus. & Prop. Cts. of England & Wales July 17, 2019) (hereinafter "U.K. Action") ("SKAT is a *function* of the

Danish Government and is charged with the assessment and collection of Danish taxes. It *brings these claims in a private capacity* as a result of civil wrongs set out herein." (emphasis supplied))). Indeed, in parallel proceedings in the United Kingdom, SKAT specifically contends that it has a "separate legal personality" from other ministries, *see* Bongiorno Decl. Ex. C (Ninth Witness Statement of Jonathan Robert Fortnam ¶ 29.1, U.K. Action (Feb. 15, 2019)), and relies on an expert opinion stating that "[a]ll ministerial authorities have separate legal personalities and they can act in their own legal capacity," Bongiorno Decl. Ex. D (Expert Op. of Dr. Frederik Waage ¶ 4.1, U.K. Action (Feb. 14, 2019)).

Even in its opposition brief, SKAT's view of its own capacity is schizophrenic, oscillating between *being* the Kingdom or just part of it. *Compare* Opp'n 8 ("SKAT, as the Kingdom of Denmark, is suing in its own right for its own injuries caused by Defendants' fraud"), *with* Opp'n 6 ("As the agency of the Kingdom of Denmark … SKAT is the part of the Kingdom of Denmark responsible for bringing these actions to recover stolen funds."), *and id.* at 8 ("SKAT sues here as the part of the Kingdom of Denmark…").

As SKAT's own indeterminacy betrays, SKAT cannot be both part of the Kingdom and the Kingdom itself. And as reams of publicly available documents confirm, SKAT has always held itself out to be part of the Kingdom, with the Kingdom itself playing a distinct role—until that sharp distinction proved inconvenient in this case. Take, for example, the U.S.-Denmark tax treaty. That document defines the Kingdom of Denmark (and the United States) as the "Contracting States." Convention for the Avoidance of Double Taxation and the Prevention of Fiscal Evasion with Respect to Taxes on Income, U.S.-Den., art. 3, Aug. 19, 1999, T.I.A.S. No. 13056. The Danish Minister of Taxation (like the U.S. Secretary of the Treasury) is defined separately as the "Competent Authority." *Id.* In that capacity, the Minister of Taxation is

authorized to obtain information held by financial institutions, *id.*, art. 26, or apply for assistance in the collection of a revenue claim, *id.*, art. 27. But only a Contracting State—*i.e.*, the Kingdom of Denmark and the United States—"may tax its residents," *id.*, art. 1. And income tax is "paid or accrued to" the Kingdom of Denmark alone, *id.*, art. 23(1). If SKAT (or the Ministry of Finance) were indistinguishable from the Kingdom, this careful allocation of responsibilities would be pointless; SKAT could simply do whatever the Kingdom is authorized to do.

SKAT's facile conflation of itself as an agency of the Danish government and the government itself flies in the face of U.S. law that clearly demarcates between foreign governments and their agencies and instrumentalities. For example, the Foreign Sovereign Immunities Act (FSIA) includes a statutory definition providing that, for purposes of that statute only, the term "foreign state" includes "a political subdivision of a foreign state or an agency or instrumentality of a foreign state." 28 U.S.C. § 1603(a). If SKAT were correct that, under U.S. law (and Article III), a foreign agency is tantamount to the government of which it is part, Congress's specific intervention on this point would not be required. Moreover, the fact that Congress equates the foreign state and its subdivisions for purposes of immunity does not mean that such subdivisions are treated as the sovereign itself for all purposes. Indeed, in the tax context, the IRS defines "foreign government" using a different set of terminology and criteria from the FSIA to determine which parts of a foreign state may be taxed. *See* 26 C.F.R. § 1.892-2T ("The term 'foreign government' means only the integral parts or controlled entities of a foreign sovereign.'"); *cf. Uniband, Inc. v. Comm'r,* 140 T.C. 230, 256 (2013) ("[T]he question whether the sovereign immunity of a tribe extends to an organization is distinct from the question whether an organization is an integral part of a sovereign entity for tax purposes.").

If this case implicated the FSIA or the Internal Revenue Code, perhaps SKAT could claim to be a "foreign government" for the limited purposes of those regimes. But here, where Article III is at stake, SKAT offers only a conclusory claim that it *is* the Kingdom of Denmark. That does not suffice.[1]

**B. SKAT's Unitary Government Theory Is Contrary to Article III**

SKAT's theory is that the agencies and entities that "comprise" the Danish government are not "distinct" from the government itself; rather, such entities have "no separate legal existence" from the sovereign. Opp'n 2. Under SKAT's theory, there is no meaningful distinction between a foreign government and its agencies, and so any such agency or subdivision can sue for an injury to the government. Whatever its truth or accuracy as a matter of Danish politics, that submission does not matter for purposes of Article III standing. Neither congressional enactments nor state law can create standing. *See Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1548 (2016); *Ross v. AXA Equitable Life Ins. Co.*, 115 F. Supp. 3d 424, 434 (S.D.N.Y. 2015) ("[W]hether a state law authorizes standing, or whether a plaintiff has standing to bring suit in state court more generally, is irrelevant to the Article III analysis."), *aff'd*, 680 F. App'x 41 (2d Cir. 2017). The political organization of a foreign government cannot do so either. Article III insists that the injured party—and only the injured party—bring suit.

The doctrine of legislative standing provides an apt analog. As the Supreme Court recently confirmed, individual legislators may not bring suit on behalf of the legislature if they allege an institutional injury—*i.e.*, an injury to the power of the entire legislature that affects

---

[1] While foreign governments necessarily act through their constituent agencies, they can—and do—routinely bring suit in their own name in the United States. *See, e.g., Pfizer, Inc. v. Gov't of India*, 434 U.S. 308, 98 S. Ct. 584 (1978); *United States v. Federative Republic of Brazil*, 748 F.3d 86 (2d Cir. 2014); *Republic of Honduras v. Philip Morris Cos.*, 341 F.3d 1253 (11th Cir. 2003).

Case 1:18-md-02865-LAK Document 81 Filed 08/15/19 Page 10 of 15

each member equally, rather than harm to any particular member. *See Virginia House of Delegates v. Bethune-Hill*, 139 S. Ct. 1945, 1953-54 (2019). Rather, to have standing, the legislator must show "such a personal stake in the outcome of the controversy as to warrant *his* invocation of federal-court jurisdiction," *State by & through Tennessee General Assembly v. United States Dep't of State*, 2019 WL 3310332, at *5 (6th Cir. July 24, 2019) (emphasis in original), such as when a legislator is "barred from exercising [his] right to vote on bills," *Kerr v. Hickenlooper*, 824 F.3d 1207, 1216 (10th Cir. 2016). The point of this doctrine is to align the structure of government with Article III standing. Different arms of the government are free to bring suit so long as they can personally satisfy the generally applicable requirements for doing so. That requires "claim[ing] a personal injury that zeroes in on the individual and is thus concrete and particularized." *Id.*; *see also Alaska Legislative Council v. Babbitt*, 181 F.3d 1333, 1338-39 (D.C. Cir. 1999) (where the state, not the legislature, is injured, "the [l]egislature suffers no separate, identifiable, judicially cognizable injury that entitles it to sue on its own behalf"). Just as individual legislators must prove a distinct and personal injury in order to sue, Article III requires the same showing from an agency or instrumentality of the Kingdom of Denmark, regardless of how it is treated under Danish law.

Having the right plaintiff—the true injured party—before this Court is critical to the proper functioning of adversarial civil litigation. If the Kingdom suffered the injury that SKAT seeks to vindicate, Defendants should be entitled to first-party discovery on the Kingdom as a whole; but SKAT is the only party here—and SKAT has refused in discovery in this case to provide documents or information belonging to "any *other* agency or instrumentality of the government of the Kingdom of Denmark." Bongiorno Decl. Ex. A (emphasis supplied)). Most important, if SKAT can recover for an injury to the Kingdom on the theory that it *is* the

Kingdom (simply because it is a part of it), then there is no rational limit to who can sue for the same injury—and so no guarantee that Defendants will be shielded from duplicative recovery for the same claims. Can the Ministry of Finance sue next, on the same claims? Can the Minister himself? What about the Kingdom? There is no exclusivity to SKAT's Danish law-based theory of standing, but that is precisely what U.S. standing law requires: The injured party, and only the injured party, gets to hale the defendant into court.[2] *See Jackson Nat'l Life Ins. Co. v. Ligator*, 949 F. Supp. 200, 204 (S.D.N.Y. 1996) ("[T]he type of secondary standing claimed by [plaintiff] is disfavored precisely because it can lead to double recovery.").

## II. SKAT Has No Particular, Individual Injury and No Standing to Sue

SKAT's only argument that it suffered a particular, individual injury—of the sort required to maintain Article III standing—is that it holds a bank account in its own name from which it paid money to Defendants. Opp'n 2-3. But if having possession of funds in a bank account or making payments to a defendant were sufficient for standing, then the investment advisor in *Huff* or the money remitter in *Cambio Exacto* would have had standing. *See* Mot. 8-10. They did not. Second Circuit law makes clear that mere payment or possession of funds is

---

[2] To be sure, Article III case law recognizes relationships among parties—but it still insists on a particular and individualized injury. The notion that some other party may sue in the injured party's place is permitted in certain circumstances, none of which is present here. *W.R. Huff Asset Mgmt. Co., LLC v. Deloitte & Touche LLP*, 549 F.3d 100, 109 (2d Cir. 2008) (discussing exceptions to injury-in-fact requirements, such as a close relationship to the injured party and a barrier to the injured party's ability to sue); *see also L.A.M. Recovery, Inc. v. Dep't of Consumer Affairs,* 377 F. Supp. 2d 429, 438 (S.D.N.Y. 2005) (Kaplan, J.), *aff'd*, 184 F. App'x 85 (2d Cir. 2006). SKAT has alleged here an injury to the Kingdom of Denmark, yet it seeks to bring suit as only part of the institution that suffered that injury. To allow SKAT to circumvent these well-litigated doctrines would undermine Article III requirements and the careful limits that the Supreme Court has placed on third-party standing.

not enough. *See W.R. Huff Asset Mgmt. Co., LLC v. Deloitte & Touche LLP*, 549 F.3d 100, 104, 107 (2d Cir. 2008); *United States v. Cambio Exacto, S.A.*, 166 F.3d 522, 527-29 (2d Cir. 1999).[3]

As *Huff* and *Cambio Exacto* establish, the question for Article III purposes is whether the loss of funds alleged in the Complaints constitutes an injury to the party bringing suit. Based on SKAT's own pleadings and opposition brief, the answer to that question is no: As Defendants showed in their motion—and SKAT does not address—SKAT had no skin in the game with respect to the supposed shortfall that Defendants' alleged fraud supposedly caused. The money belonged to the Kingdom of Denmark, no matter the name on the bank account, and SKAT did not have to collect additional taxes to replenish its account or divert funds from elsewhere to cover the difference in the account balance. Rather, any reduction in funds held in SKAT's bank account causes injury elsewhere in the government—for example, by requiring reduced expenditures and services or additional borrowing by the Kingdom. This confirms that SKAT's bank account was nothing more than a pass-through repository for funds to and from the Kingdom. SKAT is not poorer because of the money it paid to Defendants; SKAT did not bear the ultimate expense of these payments, and so it lacks injury and has failed to establish standing.

---

[3] Citing *Carter v. HealthPort Technologies, Inc.*, 822 F.3d 47 (2d Cir. 2016), SKAT says that this Court can find standing on the basis of the Complaints alone because the "plausible allegations … are themselves sufficient to show standing." Opp'n 3. That is not so. SKAT's entire theory of standing has changed from the Complaints to its opposition to the motion to dismiss. Whereas it sued as an *agency* of the Kingdom, it now asserts that it brings suit *as* the Kingdom itself. SKAT's about-face confirms that even it does not believe that the allegations in the Complaints suffice. Regardless, the materials before this Court strongly put SKAT's standing at issue and foreclose merely accepting the allegations as true for purposes of testing its standing. *See Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000) ("In resolving a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1), a district court, as it did here, may refer to evidence outside the pleadings. A plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists." (citations omitted)).

Citing the Andersen Declaration, SKAT says that it is somehow differently situated from the investment adviser in *Huff* because it paid Defendants from an account "over which it held title." Opp'n 6 (citing Andersen Decl. ¶ 19). That citation is as telling as it is misleading. Andersen says that "[w]hen the account is in SKAT's name, it means that SKAT, and in effect the Kingdom of Denmark, holds ownership and legal title to said bank account," and "[s]ince SKAT holds these accounts as the competent Agency within the Kingdom of Denmark, it is understood that these amounts will [be] transferred to other accounts in accordance with applicable rules." Andersen Decl. ¶ 19. For SKAT to have standing under *Huff* (or otherwise), it must have a legal claim to the *funds* that were paid to Defendants; title to the *account* is not enough. And all the cited paragraph actually says is that SKAT has title over the bank account; it says nothing about whether SKAT has title over the funds. Far from clarifying or supporting SKAT's legal title to the funds that were paid to Defendants, Andersen confirms that SKAT was an accountholder only, and that it has a nondiscretionary duty to remit those funds (which do not belong to it) to other government agencies on behalf of the Kingdom. *See* Andersen Decl. ¶ 19.[4]

SKAT similarly tries to distinguish *Cambio Exacto* on the ground that the money transmitter in that case was not injured in a way that would be redressed through a successful judgment. Opp'n 9. Whereas a judgment in that case "would result in [the funds'] return to Perusa," not the transmitter, SKAT says that "Defendants' fraud … would be redressed by a damages award" here. Opp'n 9. But SKAT does not dispute that the money it paid out belonged

---

4 *Sprint Communications Co. v. APCC Services, Inc.*, does not help SKAT on this point: There, the plaintiffs' standing required a valid assignment (and, as a result, "legal title") to the underlying claim—not just an interest in a bank account. 554 U.S. 269, 284-85, 128 S. Ct. 2531, 2541-42 (2008). There has been no assignment here, *see* Opp'n 8, and SKAT does not claim legal title to anything of consequence—not to the Kingdom's claims against Defendants, nor to the funds in the accounts held in SKAT's name.

to the Kingdom and that SKAT will transfer any money paid to it as a result of a potential judgment in these cases to other accounts "in accordance with applicable rules." Andersen Decl. ¶ 19. Thus, a damages award would only redress injuries to the other accounts that are entitled to the funds under "applicable rules," not SKAT itself.

SKAT relies principally on *Carter v. HealthPort Technologies, Inc.*, but that case confirms that SKAT has no standing to sue. In *Carter*, the plaintiffs were patients who claimed to have overpaid for medical records; the defendant healthcare providers argued that the plaintiffs' attorneys who made the actual payments to the defendants for the records suffered the injury. 822 F.3d 47, 58 (2d Cir. 2016). The Second Circuit held that the patients had standing because the complaint was clear that they bore the "ultimate expense" of the records, not their lawyers. *Id.* SKAT does not allege in the Complaints that it bore the "ultimate expense" of the payments to Defendants. Rather, SKAT occupies the role here that the attorneys (who did not have standing) occupied in *Carter*. As that case makes plain, when an agent makes a payment on the principal's behalf, the principal and not the agent has standing to sue for any injury. *See id.* (noting that "the plaintiffs were the principals, who acted through their agents in requesting and paying for the records"). SKAT is not the principal here—the Kingdom is—and notwithstanding SKAT's protestations that it *is* the Kingdom, SKAT's Complaints and opposition brief only confirm that it made the challenged payments not on its own behalf, but on behalf of the Kingdom. That does not suffice.

**CONCLUSION**

For the foregoing reasons, the Complaints should be dismissed against Defendants in the above captioned cases. Defendants respectfully request oral argument.

Dated: August 19, 2019
New York, New York

By: /s/ *Michael G. Bongiorno*
MICHAEL G. BONGIORNO
ALAN E. SCHOENFELD
ALLISON STODDART
WILMER CUTLER PICKERING
HALE AND DORR LLP
7 World Trade Center
250 Greenwich Street
New York, NY 10007
(212) 230-8800
Michael.Bongiorno@wilmerhale.com
Alan.Schoenfeld@wilmerhale.com
Allison.Stoddart@wilmerhale.com

MICHAEL POSADA
WILMER CUTLER PICKERING
HALE AND DORR LLP
1875 Pennsylvania Avenue, NW
Washington, DC 20006
(202) 663-6000
Michael.Posada@wilmerhale.com