# MEMO ENDORSED

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

USDS SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: __9/18/24__

In re

CUSTOMS AND TAX ADMINISTRATION
OF THE KINGDOM OF DENMARK
(SKATTEFORVALTNINGEN) TAX REFUND
SCHEME LITIGATION

This document relates to case nos.:
18-cv-07828; 19-cv-01785; 19-cv-01867; 19-cv-01893; 19-cv-01781; 19-cv-01783; 19-cv-01866; 19-cv-01895; 19-cv-01794; 19-cv-01865; 19-cv-01904; 19-cv-01798; 19-cv-01869; 19-cv-01922; 19-cv-01800; 19-cv-01788; 19-cv-01870; 18-cv-07827; 19-cv-01791; 19-cv-01792; 19-cv-01928; 19-cv-01926; 19-cv-01868; 18-cv-07824; 19-cv-01929; 19-cv-01803; 19-cv-01806; 19-cv-01906; 19-cv-01801; 19-cv-01894; 19-cv-01808; 19-cv-01810; 19-cv-01809; 18-cv-04833; 19-cv-01911; 19-cv-01898; 19-cv-01812; 19-cv-01896; 19-cv-01871; 19-cv-01813; 19-cv-01930; 19-cv-07829; 18-cv-04434; 19-cv-01815; 19-cv-01818; 19-cv-01931; 19-cv-01918; 19-cv-01873; 19-cv-01924; 19-cv-10713; 21-cv-05339.

MASTER DOCKET

18-md-2865 (LAK)

**PLAINTIFF SKATTEFORVALTNINGEN'S MEMORANDUM OF LAW
IN SUPPORT OF ITS MOTION *IN LIMINE* TO EXCLUDE CERTAIN EVIDENCE
DEFENDANTS CLAIM SUPPORTS THEIR COMPARATIVE FAULT OR STATUTE
<u>OF LIMITATIONS DEFENSES</u>**

HUGHES HUBBARD & REED LLP
William R. Maguire
Marc A. Weinstein
Neil J. Oxford
Dustin P. Smith
Gregory C. Farrell
One Battery Park Plaza
New York, New York 10004
(212) 837-6000

*Counsel for Plaintiff Skatteforvaltningen
(Customs and Tax Administration of the
Kingdom of Denmark)*

<u>Memorandum Endorsement</u>    In re Customs and Tax Admin., Master Docket 18-md-2865 (LAK)

Before the Court is plaintiff's motion *in limine* to "exclude certain evidence defendants claim supports their comparative fault or statute of limitations defenses" pursuant to Federal Rules of Evidence 401 and 403.[1]   Specifically, plaintiff seeks to exclude: (1) a 2007 memorandum written by Leif Normann Jeppesen, a senior SKAT lawyer (the "2007 Jeppesen Memo"), (2) a 2006 memorandum written by Lisbeth Rømer, a SKAT employee in the division responsible for administering dividend withholding (the "Problem Catalog"), (3) five audit reports issued by the Danish Ministry of Taxation's internal audit agency ("SIR") in 2006, 2010, 2013, 2014, and 2015 (collectively, the "SIR Reports"), and (4) a 2016 report issued by the Danish National Audit Office (the "2016 National Audit Office Report").  The motion is granted in part and denied in part.

Defendants contend that the above-noted evidence — which they say shows that SKAT "knew for at least a decade that the information it sought from dividend withholding applicants was not sufficient to allow SKAT to verify whether the applicants were in fact entitled to the refunds" — would be relevant in several respects.[2]  First, defendants argue, the evidence would be relevant to whether SKAT relied reasonably on defendants' representations in their refund claims, comparative negligence, and the balance of equities.  Second, defendants argue that the evidence would be relevant to their anticipated statute of limitations defense.  The Court considers these relevancy grounds in reverse order.

None of the evidence in question would be relevant to defendants' anticipated statute of limitations defense.  In sum, defendants argue that the evidence "shows that SKAT in fact knew it was at risk of paying out illegitimate claims" but failed to make a proper investigation "that could have uncovered the basis for SKAT's claims against the defendants."[3]  As this Court explained previously, this theory of relevance is "flaw[ed]" because it does not "demonstrate that SKAT knew or should have known of its claims *against the defendants*," which is the relevant inquiry under Danish law.[4]  Not only are the types of fraud identified in the evidence at issue distinct from the

---

[1] Dkt 1141.

[2] Dkt 1164 (Def. Mem.) at 1.

[3] *Id*. at 2, 14; *see, e.g.*, *id.* at 16 ("The retrospective analysis of the National Audit Office of Denmark is *directly* relevant to when SKAT should have known of its claims.  SKAT's awareness of *general issues* with respect to its administration of dividend withholding tax is squarely relevant to, among other things, the defendants' statute of limitations defense." (second emphasis added)).

[4] *In re Customs & Tax Admin. of the Kingdom of Denmark (SKAT) Tax Refund Litig.*, No. 18-cv-04051, 2023 WL 8039623, at *15 (S.D.N.Y. Nov. 20, 2023) (emphasis added); *see* Dkt 1071 (Pl. Disputed Foreign Law Mem.) at 8 ("[T]he Danish statute of limitations on each of SKAT's claims against each defendant began to run only when SKAT knew of or

2

fraud alleged in this case, but also the evidence does not indicate defendants' involvement.  Thus, for example, the Court rejects defendants' argument that the SIR Reports would be "uniquely relevant to the statute of limitations defense because [they] show[] that SKAT in fact knew it was at risk of paying out illegitimate claims."[5]  This is so because whether SKAT knew of this *general* risk would be irrelevant to whether it knew (or had reason to know) that *defendants'* refund claims were fraudulent.  Likewise, the Court rejects defendants' argument that the 2016 National Audit Office Report would be "directly relevant to when SKAT should have known of its claims."[6]  Because this evidence does not suggest that SKAT should have known of its claims *against defendants*, it would be irrelevant to defendants' anticipated statute of limitations defense.

Defendants' other theories of relevance — reasonable reliance, comparative negligence, and the balance of equities — requires specific consideration of each piece of evidence defendants seek to introduce.

The 2007 Jeppesen Memo pertained to the potential for both lenders and borrowers of shares to claim withholding refunds "based on the same underlying shares."[7]  As plaintiff points out, this evidence would be irrelevant to reasonable reliance, comparative negligence, and the balance of equities because plaintiff "does not claim that defendants' fraud involved refund claims based on borrowed shares, nor do the defendants claim that they obtained the shares by borrowing through a stock loan."[8]  "Rather," plaintiff alleges that "defendants' [refund] claims were fraudulent because they purported to purchase, not borrow, shares that did not exist."[9]  Defendants respond that the report would be relevant, notwithstanding these differences, because it "highlighted" a risk — plaintiff's inability to "distinguish between the owner of a share and its borrower" — that resulted from a vulnerability that also enabled defendants' alleged fraud.[10]  This connection is strained, to say the least.  Even if the 2007 Jeppesen Memo were to have some relevance, a dubious proposition, its probative value would be outweighed substantially by its potential for confusing the jury.

---

should have known of its particular claim against the particular defendant."); Dkt 1112 (Andersen Decl.) at ¶ 12.

[5]   Dkt 1164 (Def. Mem.) at 14.

[6]   *Id.* at 16 (emphasis omitted).

[7]   Dkt 1141 (Pl. Mem.) at 14–15.

[8]   *Id* at 15.

[9]   *Id*.

[10]   Dkt 1164 (Def. Mem.) at 11.

3

Accordingly, the 2007 Jeppesen Memo is excluded under both Rule 401 and Rule 403.

 The 2006 SIR Report similarly would be irrelevant. The issues it identified with SKAT's processing of refund claims — which had little if anything in common with those that made SKAT vulnerable to the fraud alleged here — "were resolved before the defendants started submitting fraudulent tax refund claims."[11] Despite this, defendants insist that the report would be relevant because it is "possible" that the fact that SKAT was able to resolve those issues "would . . . enhance the jury's skepticism of SKAT's argument that it could not have resolved the concerns identified in later internal audit reports."[12] This argument is risible. That SKAT could fix unrelated problems makes it no more (or less) likely that it could fix other problems that may have enabled the alleged fraud. The 2006 SIR Report is excluded because it would be irrelevant and, in any case, pose an unjustifiable risk of confusing the jury.

 With limited exception, the 2010, 2014, and 2015 SIR Reports and Rømer's Problem Catalog similarly would lack relevance. Defendants assert that this evidence would be relevant because it would show that SKAT was aware that it had difficulty verifying the validity of claims of ownership of shares held through omnibus accounts. But, as plaintiff explains, this has nothing to do with defendants' alleged fraud because defendants did not claim refunds in connection with shares held through omnibus accounts.[13] Therefore, SKAT's vulnerabilities arising from omnibus accounts would be irrelevant.[14] To the extent, if any, that this evidence would have any relevance,

---

[11] Dkt 1141 (Pl. Mem.) at 7.

[12] Dkt 1164 (Def. Mem.) at 13.

[13] Dkt 1141 (Pl. Mem.) at 3, 16–17.

 Defendants argue that the Problem Catalog would have greater relevance because it identified other "issues with SKAT's administration of the dividend withholding tax program." Dkt 1164 (Def. Mem.) at 9. Defendants fail, however, to identify what these other, purportedly relevant 'issues' would be, and their quotation of the Problem Catalog is misleading. *Compare id*. ("Ms. Rømer was *painting in broad strokes* when she concluded that 'the dividend tax administration today is to a large extent administered blindly[,] as the information on the actual distribution is not known at the time, the administration conducts its business operations.'" (emphasis added) (quoting Dkt 1140-2 (Rømer Dep.) at 152:19-24, which itself quoted Dkt 1140-3 (Rømer Problem Catalog) at 6), *with* Dkt 1140-3 (Rømer Problem Catalog) at 6 (characterizing the dividend tax program as "administered blindly" in the particular context of "information on dividend recipients [being] only available to the dividend tax administration up to ten months after the distribution and receipt of dividends/distribution has taken place.").

[14] Thus, for example, the 2010 SIR Report's conclusion that "[t]here is no check as to whether dividend tax is requested more than once per share," Dkt 1164 (Def. Mem.) at 13 (quoting

4

it is excluded because that relevance would be substantially outweighed by the risk of confusion.

The 2010 and 2015 SIR Reports would be relevant, however, to the extent that they evidence that SKAT lacked the ability or otherwise failed to verify the veracity of a refund claim.[15] Such evidence might bear on the issues of reasonable reliance, comparative negligence, and the balance of equities. Accordingly, with respect to this evidence, plaintiff's motion is denied without prejudice to renewal, including on the ground that the evidence is unnecessarily cumulative.[16]

The 2013 SIR Report would be irrelevant substantially for the reasons explained by plaintiff to which defendants offer no substantive response.[17] Briefly stated, the 2013 SIR Report pertains only to SKAT's knowledge that it was vulnerable to fraudulent tax refund claims filed through SKAT's "bank" or "spreadsheet scheme" in which Danish banks applied for tax refunds on behalf of their customers.[18] The report would have no relevance to defendants' allegedly fraudulent claims, which were filed directly with SKAT.[19]

Defendants argue also that the 2015 SIR Report and the 2016 National Audit Office Report "contain[] data on the net withholding tax collected and refunds paid" that would be "relevant to assessing whether SKAT can meet its burden of proving loss."[20] As defendants point

---

[15] Dkt 1140-6 (2010 SIR Report) at 13), would be irrelevant because the quoted language follows immediately from the report's finding that "*the use of Omnibus accounts* means that several dividend notes are printed . . . for a single share," Dkt 1140-6 (2010 SIR Report) at 13 (emphasis added).

[16] *E.g.*, Dkt 1140-6 (2010 SIR Report) at 13 (SKAT made "no checks in connection with refund requests as to whether the investor is actually a shareholder and whether the investor is in fact liable for tax in Denmark or not").

[17] To the extent that plaintiff states that it is concerned that this evidence might mislead the jury by suggesting that SKAT "was required to confirm . . . [share] ownership before paying a refund claim and could not rely on the representations made . . . by the claimant as sufficient proof of dividend receipt," Dkt 1141 (Pl. Mem.) at 16, the Court would consider an appropriate jury instruction if one were so requested.

[18] *See id.* at 17–18; Dkt 1164 (Def. Mem.).

[19] Dkt 1140-7 (2013 SIR Report) at 6–7 (audit finding based on assessment of "spreadsheet scheme").

[20] *See* Dkt 1141 (Pl. Mem.) at 3.

Dkt 1164 (Def. Mem.) at 15, 17.

5

out, plaintiff "has identified no basis to exclude" this data.[21]  In consequence, plaintiff's motion is denied with respect to this data.

Defendants' motion (Dkt 1141) is granted in part and denied in part.  In summary, the Court holds that:

- The 2007 Jeppesen Memo is excluded in its entirety;

- The Rømer Problem Catalog is excluded in its entirety;

- The 2006 SIR Report is excluded in its entirety;

- The 2013 SIR Report is excluded in its entirety;

- The 2014 SIR Report is excluded in its entirety;

- The 2010 SIR Report is excluded except to the extent that it shows that SKAT lacked the ability or otherwise failed to verify the veracity of refund claims;

- The 2015 SIR Report is excluded except to the extent that it shows that SKAT lacked the ability or otherwise failed to verify the veracity of refund claims and to the extent that it contains data relevant to SKAT's loss amount.

- The 2016 National Audit Office Report is excluded except to the extent that it contains data relevant to SKAT's loss amount.

SO ORDERED.

Dated:        September 18, 2024

_____
        Lewis A. Kaplan
    United States District Judge

---

[21]        Id. at 15.