# Exhibit 4
# Part 1

**Spence, Michael**

| | |
|---|---|
| **From:** | Ben-Jacob, Michael |
| **Sent:** | Friday, June 20, 2014 10:25 AM |
| **To:** | 'John H. van Merkensteijn, III'; 'Adam Larosa'; 'mstein@argremgt.com'; 'Jérôme LHOTE'; 'Richard Markowitz' |
| **Cc:** | Wells, Peter; Wechter, Kathleen |
| **Subject:** | Michelle -- Disqualified Persons Memorandum -- Final |
| **Attachments:** | Exhibit A (Michelle Memo).pdf; Michelle.pdf |

All,

Attached for your records is our finalized memorandum discussing Disqualified Person issues as they relate to the Michelle structure. Please let me know if you have any questions.

Regards.

mbj

\*\*\*

IRS CIRCULAR 230 DISCLOSURE: To ensure compliance with Treasury Department regulations, we inform you that any U.S. federal tax advice contained in this correspondence (including any attachments) is not intended or written to be used, and cannot be used for the purpose of (i) avoiding penalties that may be imposed under the U.S. Internal Revenue Code or (ii) promoting, marketing or recommending to another party any transaction or matter addressed herein.

Michael Ben-Jacob
KAYE SCHOLER LLP
425 Park Avenue | New York, New York 10022
T: +1 212.836.8310 | F: +1 212.836.6310
michael.ben-jacob@kayescholer.com | www.kayescholer.com

This message may contain confidential and/or legally privileged information from the law firm Kaye Scholer LLP. If delivered to anyone other than the intended recipient, please notify the sender immediately by return email or by telephone (+1 212.836.8310) and delete the message, along with any attachments, from your computer. Thank you.

DEFENDANTS'
EXHIBIT
**DX3956**
Case No:18-MD-2865 (LAK)

1

**CONFIDENTIAL / PRIVILEGED - SUBJECT TO 502(d) ORDER**

WH_MDL_00140665

# KAYE SCHOLER LLP

Michael Ben-Jacob
212.836.8310
michael.ben-jacob@kayescholer.com

425 Park Avenue
New York, New York 10022-3598
212.836.8000
Fax 212.836.6310
www.kayescholer.com

## MEMORANDUM

| | |
|---|---|
| **TO:** | John H. van Merkensteijn, III |
| | Matthew R. Stein |
| | Jerome Lhote |
| | Richard Markowitz |
| | Adam LaRosa |
| **FROM:** | Michael Ben-Jacob |
| **DATE:** | June 20, 2014 |
| **SUBJECT:** | Michelle Investments: Pension Plan Trades: Transactions with "Disqualified Persons" |

> **PRIVILEGED & CONFIDENTIAL**
> **ATTORNEY CLIENT COMMUNICATION**

### Facts

The Michelle Investments LLC Pension Plan (the "Michelle Plan") used the structure referred to as the "Michelle Structure" to implement certain trading transactions as described herein. The chart attached hereto as Exhibit "A" depict the Michelle Structure. The first part of this memorandum outlines our understanding from discussions with you of the facts and set-up of the Michelle Structure and the organization of the associated structure as well as the trading activity and related operations of the structure. The second part of this memorandum provides an analysis of certain issues related to transactions with "disqualified persons" under the Internal Revenue Code of 1986 (the "Code").

Michelle

CHICAGO · FRANKFURT · LONDON · LOS ANGELES · NEW YORK · PALO ALTO · SHANGHAI · WASHINGTON, DC · WEST PALM BEACH

**CONFIDENTIAL / PRIVILEGED - SUBJECT
TO 502(d) ORDER**

WH_MDL_00140666

**K**AYE SCHOLER LLP

John H. van Merkensteijn, III
Matthew R. Stein
Jerome Lhote                          - 2 -                          June 20, 2014
Richard Markowitz
Adam LaRosa

### I.    Michelle Structure

#### A.    Set-Up and Organization

Michelle Investments LLC, a Delaware limited liability company ("Michelle LLC"), was

formed on or about November 15, 2007.  John H. van Merkensteijn, III, Matthew R. Stein,

Richard Markowitz and Jerome Lhote (the "Members") are equal members of Michelle LLC.

The Members also engage in unrelated investment and other business activities through other

entities, including Argre Management LLC ("Argre"), another investment firm operating from

the same offices as Michelle LLC.  Each of the Members own 19.75% of Argre; Adam LaRosa

owns the remaining 21% interest.

On or about May 10, 2012, Michelle LLC established the Michelle Plan, which is a

prototype 401(k) plan.  As a prototype plan, the Michelle Plan is intended to be qualified under

Section 401(a) of the Code.[1]  We understand that the service provider that maintains this

prototype plan has sought and obtained an IRS response letter regarding the tax qualified status

of the form of the plan.  The Members jointly act as the trustees of the Michelle Plan pursuant to

a trust agreement.

#### B.    Trading and Related Operations

Solo Capital Partners LLP ("Solo"), a U.K. based financial services firm, presented the

Michelle Plan trustees with the trading strategy discussed below.  Solo is authorized and

regulated in the U.K. by the Financial Services Authority, but is not regulated by any regulatory

or quasi-regulatory agency in the United States.  Solo is independent of Michelle LLC, Argre,

---

[1] All "Section" references herein are to the Code  and the Treasury Regulations thereunder.

Michelle

CONFIDENTIAL / PRIVILEGED - SUBJECT
TO 502(d) ORDER                                    WH_MDL_00140667

# KAYE SCHOLER LLP

John H. van Merkensteijn, III
Matthew R. Stein
Jerome Lhote                         - 3 -                         June 20, 2014
Richard Markowitz
Adam LaRosa

the Members, and any affiliated entity of any of them and there is no common ownership

between Solo, Michelle LLC, Argre or any such entity. We understand that (i) Solo provided the

entire structure of the trading strategy to the trustees and (ii) the trustees had little or no ability to

negotiate the financial terms of the arrangement, which were basically the same, or more

favorable to the Michelle Plan, as arrangements that existed between Solo or other providers

which engage in this trading strategy and unrelated third parties who were and are engaging in

similar trading activities with Solo or those other providers.

   The investment and trading strategy outlined by Solo was as follows: the Michelle Plan

would enter into a custodial agreement with Solo pursuant to which (i) the Michelle Plan would

transfer assets to a custodial account of which Solo was the custodian, (ii) Solo provided the

Michelle Plan trustees with information about the securities of certain publicly-traded companies

on certain foreign (non-U.S.) stock exchanges, (iii) on or before the ex-dividend date for such

shares, the Michelle Plan would direct Solo to purchase shares of some or all of the companies

presented by Solo[2], (iv) Solo would guarantee the Michelle Plan's trades vis-à-vis a third-party

broker, allowing the Michelle Plan to make highly leveraged trades, (v) the purchased shares

would be held in the custodial account, (vi) the Michelle Plan would take a short futures position

in shares of such company by selling to an unrelated third party a cash-settled single stock future,

which would not expire until at least one day after the dividend record date of the purchased

shares, (vii) on behalf of the Michelle Plan, a third party would submit a tax reclamation request

---

[2] If some of the shares were too thinly-traded or otherwise deemed unacceptable by the trustees, the trustees utilized
other shares. This was typically done after additional consultations with Solo.

Michelle

CONFIDENTIAL / PRIVILEGED - SUBJECT
TO 502(d) ORDER

WH_MDL_00140668

**K**AYE SCHOLER LLP

John H. van Merkensteijn, III
Matthew R. Stein
Jerome Lhote                              - 4 -                    June 20, 2014
Richard Markowitz
Adam LaRosa

to the appropriate authorities with respect to the gross dividend amount previously withheld on

the sale by such authorities, (viii) the Michelle Plan would receive a payment equal to the net

dividend amount of the shares it held, (ix) the Michelle Plan would cause Solo to sell the shares

it holds in the market and settle the futures contract for cash, and (x) the Michelle Plan would

remit a specified percentage of the net dividend amount to Solo (which would then pay

significant fees and expenses incurred in the transactions described above which fees are

separate from third party professional and other fees paid by the Michelle Plan related to such

transactions.)  The purpose of the short futures position was to hedge against loss of principal in

order to minimize or eliminate the economic risk of holding the shares.

      The Michelle Plan simultaneously entered into a securities lending agreement with a third

party under which it lent securities in exchange for cash.  We understand that (a) the securities

lending arrangements embodied in a number of documents are typical of those entered into by

organizations in the United Kingdom and comply with United States securities lending

regulations, (b) the purpose of this arrangement was to generate the necessary liquidity to

implement the trades, and (c) investing in this arrangement does not guarantee payments to Solo

or indemnify Solo, and no payments or other benefits were received by the Michelle Plan,

Michelle LLC, the Members or their affiliates.

      As noted, while the decisions as to which securities to purchase are solely within the

purview of the Michelle Plan trustees, they did take into account the recommendations of Solo.

The trading orders were executed by Mr. LaRosa pursuant to a power of attorney executed by the

Michelle Plan granting him authority to execute trades on behalf of the Plan.  Mr. LaRosa

Michelle

**CONFIDENTIAL / PRIVILEGED - SUBJECT
TO 502(d) ORDER**

**WH_MDL_00140669**

**K**AYE SCHOLER LLP

John H. van Merkensteijn, III
Matthew R. Stein
Jerome Lhote                              - 5 -                        June 20, 2014
Richard Markowitz
Adam LaRosa

receives compensation of $5,000 for acting as attorney-in-fact and is not separately indemnified

by any party (and does not receive benefits or compensation from any party other than this

payment) for his actions pursuant to the power of attorney.

     Under the Custodial Agreement with Solo, the Michelle Plan pays fees to Solo as per the

schedule attached to the Custodial Agreement. The documents for the transaction indicate that,

of the gross amount payable to the Michelle Plan, the Michelle Plan retained approximately 34%

and the remaining 66% was paid to Solo. Solo was responsible for paying significant costs and

expenses associated with the transaction, including trading commissions, legal fees, brokerage

fees, accounting fees, tax reclaim service fees, custodial service fees, leverage providing fees and

guaranty fees. Solo does not break down its expenses so that investors such as the Michelle

Plan are not provided with a breakout of what portion of the 66% is compensation to Solo and its

affiliates and what portion pays for expenses paid to other third party service providers. The

Michelle Plan paid its own fees for third party services (legal, accounting, etc.) related to the

transaction.

     While the documents provide that the 66% paid to Solo is a "fee" to Solo, the

understanding of the parties at the time the transaction was entered into was that Solo and the

Michelle Plan were instead effectively engaged in a partnership under which the profits would be

shared between them under the above profit allocation, with Solo being responsible for all of the

partnership's expenses.

Michelle

CONFIDENTIAL / PRIVILEGED - SUBJECT
TO 502(d) ORDER
**WH_MDL_00140670**

**K**AYE SCHOLER LLP

John H. van Merkensteijn, III
Matthew R. Stein
Jerome Lhote                              - 6 -                              June 20, 2014
Richard Markowitz
Adam LaRosa

## II.    Discussion of Transactions with Disqualified Persons

### A.    Transactions with Disqualified Persons

A transaction between a retirement plan subject to Section 4975 of the Code and a "disqualified person" (described in Appendix A) that is prohibited under section 4975 of the Code (described in Appendix A) will be subject to the tax under Section 4975 of the Code (described below)[3] unless it meets the requirements of a prohibited transaction exemption under Section 4975. The Michelle Plan is subject to Section 4975 of the Code but should not be subject to ERISA since, as we understand, it does not cover employees and only covers the Members.

Based on the facts above and the discussion below, we conclude that an argument can be made that the "service provider exemption" should apply to these transactions as described herein. In order to prevail in such an argument, one would have to prove, as discussed below, that the fees paid by the Michelle Plan were reasonable fees.

### B.    Taxes under Section 4975

Section 4975 of the Code imposes a tax of 15% of the "amount involved"[4] on any prohibited transaction for each year (or part of a year) in the "taxable period". The taxable period begins on the date the prohibited transaction occurs and ends on the earliest of (i) the date

---

[3] The penalty for a prohibited transaction involving an individual retirement account ("IRA") is generally that the IRA ceases to be an individual retirement account as of the first day of the taxable year in which the prohibited transaction occurred, and the IRA is treated as if there were a distribution on that first day in an amount equal to the fair market value (on such first day) of all assets in the account (on such first day).

[4] The "amount involved" generally is defined in Section 4975(f)(4) as the greater of the amount of money and the fair market value of the other property given or received. However, in the case of services described in the exemptions in Section 4975(d)(2) (for compensation for certain reasonable services) and (d)(10) (for certain reasonable compensation and expenses) the "amount involved" is only the compensation that is excessive.

Michelle

**CONFIDENTIAL / PRIVILEGED - SUBJECT TO 502(d) ORDER**

**WH_MDL_00140671**

**K**AYE SCHOLER LLP

John H. van Merkensteijn, III
Matthew R. Stein
Jerome Lhote                              - 7 -                          June 20, 2014
Richard Markowitz
Adam LaRosa

of mailing a notice of deficiency with respect to the 15% tax, (ii) the date on which the tax is

assessed or (iii) the date on which the prohibited transaction is corrected[5]. Section 4975 provides

that this tax is payable by any disqualified person who participates in the prohibited transaction

other than a fiduciary acting only as such[6]. An additional tax of 100% of the amount involved is

imposed on any such disqualified person if the initial 15% tax is imposed and the transaction is

not corrected within the taxable period.

Correcting a prohibited transaction means to undo the transaction to the extent possible

and in any case to place the plan in a position not worse than that in which it would have been if

the disqualified person had acted under the highest fiduciary standards[7].

**C.    Discussion of Prohibited Transactions**

Based on the definition of "disqualified person" and the activities of the respective

entities as described above, we believe that none of the entities with which the Michelle Plan has

entered into securities lending arrangements or sold cash-settled stock futures to, or any of the

publicly-traded companies from which the dividends are paid should, as a result of these

activities, become a disqualified person with respect to the Michelle Plan. However, Solo, Mr.

LaRosa and the party which files the tax reclaim forms will be disqualified persons because of

their performance of services with respect to the Michelle Plan, as described herein.[8]

---

[5] Section 4975(f)(2) of the Code.
[6] Therefore, it is possible that if a transaction resulted in more than one disqualified person being liable, each would have to pay the 15% excise tax.
[7] Section 4975(f)(5).
[8] We understand that none of these publicly traded companies or the entities with which the securities lending arrangements are entered into have any other relationship to the Michelle Plan which would result in them being treated as a disqualified person under Section 4975 of the Code.

Michelle

**CONFIDENTIAL / PRIVILEGED - SUBJECT
TO 502(d) ORDER**

**WH_MDL_00140672**